CC-96-208                                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Autoridad de Desperdicios Sólidos<br>    Recurrida<br><br>    v.<br><br>Municipio de San Juan<br>    Recurrente | Certiorari<br><br>2000 TSPR 6 |
| --- | --- |

Número del Caso: CC-1996-0208

Fecha: 19/01/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel Integrado por:        Hon. Arbona Lago
                            Hon. Giménez Muñoz
                            Hon. Salas Soler

Abogadas de la Parte Recurrente: Lcda. Ana María López Erquicia
                                 Lcda. Teresa García Dávila

Abogado de la Parte Recurrida: Lcdo. Valéry López Torres

Abogada del Departamento de Justicia: Lcda. Marta María Rosario

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Desperdicios Sólidos

    Querellante-recurrida

       v.                      CC-96-208       CERTIORARI

Municipio de San Juan

    Querellada-recurrente

SENTENCIA

San Juan, Puerto Rico, a 19 de enero de 2000

El Municipio de San Juan ("Municipio") y la Autoridad de Desperdicios Sólidos ("Autoridad") suscribieron un contrato de arrendamiento de maquinaria pesada el día 7 de febrero de 1990; a ser utilizado dicho equipo en el vertedero de San Juan. En el contrato, el Municipio se comprometió a pagar siete mil quinientos ochenta y tres dólares ($7,583.00) mensuales. El contrato, que era prorrogable "por acuerdo de las partes"[1], era por un término original de duración de un año, el cual comenzó a transcurrir a partir del 1ro de julio de 1989[2]. El mismo fue renovado por un año

---

[1] Cláusula Segunda del Contrato de Arrendamiento de Maquinaria Pesada.
[2] Exhibit 1 de la Petición de Certiorari.

adicional, bajo los mismos términos y condiciones, a partir del 1ro de julio de 1990[3]. El contrato estuvo vigente hasta el día 30 de junio de 1991. Luego de esa fecha, el mismo no fue renovado.

Vencido el contrato, el Municipio permaneció en posesión del equipo, el cual alegadamente quedó almacenado en las facilidades del Departamento de Control Ambiental Municipal. Así las cosas, la Autoridad envió una carta al Municipio, fechada el 24 de agosto de 1992, en la cual exigió de éste el pago de $90,996.00 por concepto de los cánones de arrendamiento correspondientes al período de tiempo entre 1[ro.] de julio de 1991 y el 30 de junio de 1992. Finalmente, y luego de varias comunicaciones de una y otra parte, la Autoridad sometió el caso ante la consideración de la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales ("Comisión"), creada por la Ley Núm. 80 del 3 de junio de 1980, 3 L.P.R.A. 1751.

Dicha Comisión, luego de varios trámites procesales, celebró vista el 7 de diciembre de 1994. En la vista, el Municipio solicitó la desestimación de la acción por falta de jurisdicción de la Comisión. La Oficial Examinadora denegó dicha solicitud el mismo día, esto es, el 7 de diciembre de 1994. El Municipio presentó, en tiempo, una solicitud de <u>reconsideración que fue radicada el 27 de diciembre de 1994</u>, junto con un memorando de derecho en apoyo de la misma. La solicitud <u>fue declarada no ha lugar el 23 de mayo de 1996; esto es, casi 17 meses después de presentada</u>. La Autoridad, mientras tanto, ajustó su factura original de noventa mil novecientos

---

[3] Exhibit 2 de la Petición de Certiorari.

noventa y seis dólares ($90,996.00) a treinta y siete mil novecientos quince dólares ($37,915.00). Esa es la cantidad que actualmente se reclama del Municipio[4].

El Municipio presentó un recurso de revisión judicial <u>el 7 de junio de 1996</u> ante el Tribunal de Circuito de Apelaciones. En el mismo, alegó que había errado la Comisión al no reconocer su falta de jurisdicción para entender en la materia y al tomar una determinación contraria a la política pública, poderes y facultades reconocidos a los municipios por la Asamblea Legislativa a través de la Ley de Municipios Autónomos, Ley Núm. 81 del 30 de agosto de 1991, según enmendada, 21 L.P.R.A. 4001 et. seq. El Tribunal de Circuito de Apelaciones <u>denegó</u> el recurso el 11 de junio de 1996. Inconforme, el Municipio acudió ante este Tribunal, vía certiorari. Expedimos el recurso. Oportunamente, la Autoridad presentó su oposición al recurso de Certiorari.

En esencia, el Municipio argumenta que la Comisión carece de jurisdicción. Apuntala su contención en dos argumentos, a saber: primero, alega que el Municipio ya no es parte del gobierno central y que, por lo tanto, no puede sometérsele ante una comisión que resuelve controversias entre "agencias gubernamentales"[5]; y, segundo, que la Ley que crea la Comisión sólo la faculta para entender en asuntos donde deba determinarse el monto

---

[4] Del expediente no surge la razón para el ajuste en la cantidad adeudada. Tampoco surge si el Municipio ya devolvió la maquinaria pesada objeto de la controversia o la fecha en que ello ocurrió.

[5] "Erró la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales al tomar una determinación cuando carece de jurisdicción para resolver una controversia que es estrictamente justiciable a través de los Tribunales y no por medio de unidades administrativas."

y modo de pagar una deuda entre agencias y no cuando se cuestiona la existencia de la misma[6].

La Autoridad, por su parte, plantea que la Asamblea Legislativa facultó a la Comisión para resolver controversias como esta para la cual tiene jurisdicción primaria y exclusiva, según concluyó el Secretario de Justicia en su Opinión Núm. 8 de 1985.

Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

La Ley de la Judicatura, según enmendada el 25 de diciembre de 1995, en su Artículo 4.002(g), 4 L.P.R.A. 22k(g) otorga competencia al Tribunal de Circuito de Apelaciones para revisar decisiones y órdenes administrativas. En específico, el Inciso (g) del mencionado artículo de ley dispone que ello se hará mediante auto de revisión, a ser expedido discrecionalmente, de las decisiones, reglamentos, órdenes y resoluciones de cualquier agencia administrativa, de acuerdo con los términos y condiciones establecidos por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme ("L.P.A.U.").

Así pues, la sección 4.2 de la L.P.A.U., 3 L.P.R.A. 2172, establece que: "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por

---

[6] "Erró la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales al tomar una determinación contraria a la política pública que pone en vigor, y a los poderes y facultades que

el organismo administrativo apelativo correspondiente

podrá presentar una solicitud de revisión ante el

Tribunal de Circuito de Apelaciones...". (Enfasis

nuestro.)

No obstante, hemos resuelto que el planteamiento sobre

carencia de jurisdicción es uno de índole privilegiado

que puede hacerse, incluso, por primera vez, a nivel

apelativo; que los tribunales deben ser celosos

guardianes de su jurisdicción, al extremo que, incluso,

aun ante ausencia de señalamiento a esos efectos por las

partes, el Tribunal viene en la obligación de levantarlo

*motu proprio*. Vazquez v. A.R.P.E., 128 D.P.R. 513 (1991);

Martínez v. Junta de Planificación, 109 D.P.R. 839, 842

(1980); Sociedad de Gananciales v. A.F.F., 108 D.P.R.

644, 645 (1979).[7]

En el caso de autos, estamos impedidos de evaluar, y

resolver, el recurso ante nuestra consideración puesto

que hay un defecto jurisdiccional vital: el recurso fue

presentado tardíamente ante el Tribunal de Circuito de

Apelaciones. Veamos.

La Sección 3.15 de la L.P.A.U., 3 L.P.R.A. 2165[8], dispone

que una parte adversamente afectada por la determinación

---

le han sido conferidos por mandato expreso de la Asamblea Legislativa a los municipios."

[7] J. Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, 1979, Publicaciones JTS, Cap. II, págs. 10 y ss.

[8] "La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince(15) días, según sea el caso. Si se tomare alguna determinación en

de una agencia tendrá veinte (20) días, desde la fecha de

archivo en autos de la notificación de la resolución,

para solicitar reconsideración de la misma. Una vez

radicada la moción, la agencia tendrá quince (15) días

para atenderla. Según la Sec. 4.2, 3 L.P.R.A. 2172[9], si

su consideración, el término para solicitar revisión empezara a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa(90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa días (90) días de haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa(90) días, prorrogue el término para resolver por un período que no excederá de treinta(30) días adicionales."

[9] "Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de 30 días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo.

En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones dentro de un término de 10 días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de los 10 días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título. La mera presentación de una solicitud de revisión al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada.

La competencia sobre el recurso de revisión será del Circuito Regional correspondiente al lugar donde se planee, se esté llevando o se haya llevado a cabo la actividad o incidente que hubiera dado lugar a la controversia. Si la actividad o incidente se está llevando o se llevará a cabo, o hubiere ocurrido en más de una región judicial, se podrá presentar el recurso de revisión en cualquiera de los Circuitos correspondientes a tales regiones.

Una orden o resolución interlocutoria de una agencia no es revisable directamente. La disposición interlocutoria de la agencia

la agencia no actúa sobre la misma dentro de esos quince días, el término para acudir en revisión judicial, el cual es de treinta días, empezará a contarse a partir del momento en que expiraron los referidos quince (15) días. En el caso ante nos, el Municipio presentó el día 7 de diciembre de 1994 la moción solicitando la desestimación ante la Comisión, la cual fue denegada ese mismo día. El 27 de diciembre de 1994, o sea, veinte (20) días después, el Municipio presentó, en tiempo, una moción de reconsideración. La misma fue atendida, y resuelta, por la agencia el día 23 de mayo de 1996, o sea, diecisiete (17) meses después de presentada la moción de reconsideración, cuando ya estaba <u>impedida</u> de resolver la solicitud de reconsideración.

Dado los hechos particulares de este caso, si el Municipio de San Juan pretendía incoar un recurso de revisión judicial, tenía que acatar el mandato de la L.P.A.U.: cual es, si la agencia concernida no consideró la solicitud de reconsideración, dentro de los quince días que tenía para hacerlo, el Municipio tenía treinta días a partir de la fecha en que se cumplieron los quince días antes mencionados para radicar su recurso ante el Tribunal de Circuito, esto es, tenía hasta el 10 de febrero de 1995 para hacerlo. No lo hizo dentro de ese término; por el contrario,  radicó su recurso fuera de término, el día 7 de junio de 1996.

---

podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia."

Por lo tanto, el Tribunal de Circuito de Apelaciones actuó sin jurisdicción y por ende nosotros estamos impedidos de adjudicar la controversia.[10]

Por lo anteriormente expuesto, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, por haber sido dictada sin jurisdicción, y se confirma la denegatoria de desestimación emitida por la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales; devolviéndose el asunto ante dicho foro administrativo para procedimientos ulteriores.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

---

[10] Debemos señalar que la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales es una agencia, según lo define L.P.A.U., en tanto esta posee facultades investigativas y no ha sido expresamente excluida de dicha Ley.

En estos momentos no pasamos juicio sobre el Artículo 3 de la Ley Orgánica de la Comisión, 3 L.P.R.A. sec. 1753, el cual limita la revisión judicial de las determinaciones de la Comisión. Esto pues, lo que se pretende revisar es un pronunciamiento interlocutorio relativo a la jurisdicción de la Comisión y no propiamente una determinación de ésta.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Autoridad de Desperdicios
Sólidos

    Querellante-recurrida

       v.                          CC-96-208      CERTIORARI

Municipio de San Juan

    Querellada-recurrente


Opinión Disidente emitida por el Juez Asociado señor Fuster Berlingeri.


San Juan, Puerto Rico, a 19 de enero de 2000.


En el caso de autos, una mayoría del Tribunal deniega el recurso de certiorari presentado por el Municipio de San Juan porque supuestamente el peticionario no cumplió con los términos dispuestos por la Ley de Procedimiento Administrativo Uniforme (LPAU) para la revisión judicial de las decisiones de las agencias administrativas.

Disiento de este dictamen por entender, _inter alia_, que las disposiciones referidas de la LPAU no son aplicables al asunto ante nos.

En mi criterio, la llamada "Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales" que aquí nos concierne no es propiamente un organismo como los previstos

y regulados mediante la LPAU. No se trata de una agencia investida con las funciones tradicionales de los organismos administrativos, ni constituida como éstos.

La "Comisión" referida es realmente sólo un mecanismo de mediación burocrática establecido para resolver determinadas diferencias de criterio sobre cuentas interagenciales. Dicha "Comisión" está integrada por el Secretario de Justicia, el Secretario de Hacienda y el Director de Presupuesto, **con el fin de lograr acuerdos** sobre el **monto** que una agencia gubernamental le deba a otra por servicios prestados, o sobre el **modo** en que debe pagarse el monto adeudado. Se trata, pues, de un comité del Ejecutivo que interviene cuando las agencias concernidas no han podido ponerse de acuerdo respecto a los dos asuntos mencionados antes sobre cuentas entre ellas.[11]

La naturaleza puramente burocrática de la llamada "Comisión" que nos concierne aquí se desprende también de lo dispuesto en el último párrafo del artículo 3 de la ley que la estableció. Se dispone allí que cualquier determinación de la Comisión sobre el modo en que deberá pagarse la cantidad que una agencia le deba a otra, o sobre el monto de dicha cantidad si ello estuviese en controversia, **"será final y firme y no será apelable ante ningún organismo judicial o cuasi judicial"**. Tales determinaciones, pues, no constituyen propiamente una adjudicación sino sólo un dictamen ejecutivo.

En vista de lo anterior, es al menos dudoso que la LPAU aplique aquí. Sin embargo, la mayoría de este Tribunal en su breve sentencia ni siquiera menciona o discute este asunto que, entre otras cosas, considero medular.

Por otro lado, la mayoría tampoco discute el alcance o la validez del referido artículo 3 de la ley en cuestión, que prohíbe cualquier revisión judicial de los dictámenes de la "Comisión" que aquí nos concierne. Si tal disposición prevaleciese según su sentido literal,

entonces el foro apelativo carecía de jurisdicción en este caso, por un fundamento muy diferente del que la mayoría de este Tribunal invoca en su sentencia.  En tal situación sería indispensable examinar qué avenidas procesales, si alguna, tenía el Municipio para impugnar el reclamo de pago que le presentó la Autoridad de Desperdicios Sólidos, que dio lugar a este caso.

La mayoría no examina ninguna de estas cuestiones esenciales, ni otras que son pertinentes, por lo que no puedo concurrir de modo alguno con su dictamen.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

[11] Véase la exposición de motivos de la Ley Núm. 80 de 3 de junio de 1980.